## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

REUBEN MCDOWELL,

      Plaintiff,

      v.

KEVIN A. DEPARLOS, Warden, et al.

      Defendants.

CIVIL ACTION NOS. 1:15-cv-00487

(CALDWELL, J.)
(SAPORITO, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

This is a *pro se* prisoner civil rights action, which comes before the Court on a motion to dismiss by the defendants. For the reasons that follow, it is recommended that the motion be granted and the complaint dismissed for failure to state a claim upon which relief can be granted.

### I. STATEMENT OF THE CASE

In the complaint, plaintiff Reuben McDowell alleges that various Lycoming County Prison officials violated his Fourth, Sixth, Eighth, and Fourteenth Amendment rights in connection with a March 30, 2014, incident in which McDowell was assaulted by another inmate, and in connection with related disciplinary proceedings against McDowell. At the time of the assault, McDowell was a pretrial detainee at Lycoming County

Prison, awaiting trial on multiple felony charges. To this date, he remains incarcerated at Lycoming County Prison, awaiting trial.

On the evening of March 30, 2014, McDowell was assaulted by another inmate, Jason Welshans, in the day room of J-Block at the Lycoming County Prison. As a result of his injuries, McDowell was transported to a hospital, where he was found to have several broken bones in his face around the lower orbital area of his right eye. Surgery was performed three days later to insert a permanent prosthetic to stabilize the fractured orbital area. McDowell alleges that, in addition to pain and suffering he endured, he is permanently disfigured as a result of the assault, he must rely on corrective lenses to see, and he has suffered mental and emotional anguish as a result of his injury and disfigurement.

McDowell contends that his federal civil rights were violated by two corrections officers, CO Travis Scrobel and CO Johnson (whose first name is unknown to the plaintiff), who were present but failed to intervene to prevent the assault or halt it before McDowell suffered his grievous injuries. In the moments leading up to the assault, both officers were on duty in a nearby control room, where McDowell alleges they would have seen and heard the two inmates quarrelling. McDowell further alleges

that, pursuant to a prison policy, Scrobel and Johnson did not respond by intervening immediately, but rather they waited until a supervisor and additional officers arrived to assist in retaking control of the situation. Only after the additional officers arrived to assist did Scrobel and Johnson enter the day room to separate the inmates and reestablish control of the area. McDowell claims that Scrobel and Johnson violated his Fourteenth Amendment substantive due process rights by failing to intervene to separate the two inmates or take other preventative measures before Welshans physically assaulted McDowell, and by taking too long to respond once the assault commenced.

Immediately following the assault, Welshans was transferred to the prison's Special Management Unit ("SMU") pending a hearing on misconduct charges. Upon his release from the hospital on March 31, 2014, McDowell was returned to Lycoming County Prison and placed in his original cell. Initially, no misconduct charges were issued against McDowell. But one day later, on April 1, 2014, McDowell was issued a misconduct for the incident in which he was injured and transferred to the SMU pending a disciplinary hearing. McDowell claims that the charging officer, CO Scrobel, fabricated the misconduct charges at the orders of an

unidentified supervisor to make it appear that McDowell instigated the assault. He claims that supervising corrections officers Sergeant M. White and Lieutenant Josh Rogers endorsed the allegedly fabricated misconduct report despite having viewed security camera footage of the incident that McDowell claims should have made clear that the misconduct report was inaccurate.

After fifteen days of administrative custody in the SMU, McDowell was brought before the prison disciplinary committee on April 16, 2014, for a hearing on the misconduct charges against him. The committee members included Deputy Warden Brad A. Shoemaker, Lieutenant H. Entz, and Corrections Counselor Ryan Barns. McDowell claims that his Fourteenth Amendment procedural due process rights were denied because the committee refused to call the charging officer, CO Scrobel, to testify at the hearing, denying McDowell the opportunity to confront and cross-examine Scrobel, upon whose written report McDowell ultimately was found guilty of instigating a fight and disrupting prison routine. McDowell was sanctioned with an additional fifteen days of disciplinary confinement, including nine days in the SMU and six days in a disciplinary housing block. McDowell appealed this disciplinary conviction to Warden Kevin A.

Deparlos, who apparently upheld the disciplinary committee's findings and sanction. McDowell appealed the warden's decision to the Lycoming County Board of County Commissioners, which apparently upheld the warden's decision.

While in disciplinary custody in the SMU, McDowell was subjected to strip searches and body searches, and his cell was searched every night. He was denied recreation time outside his cell, "deprived of meaningful hygiene," and his sleep was disrupted.

On June 3, 2014, Welshan was criminally charged with assaulting McDowell. He ultimately pleaded guilty and was sentenced to serve an additional prison term of two to four years and to pay restitution, presumably for McDowell's medical expenses. *See Commonwealth v. Welshans*, Docket No. CP-41-CR-0000980-2014 (Lycoming County C.C.P.). Although these criminal charges were not filed until two months later, the complaint appears to suggest that they demonstrate that his disciplinary conviction and related sanctions imposed by the disciplinary committee were arbitrary.

McDowell filed several grievances and grievance appeals regarding the failure of Scrobels and Johnson to protect him, the allegedly fabricated

misconduct report, and other unspecified "violations of [his] rights" by prison staff. Although McDowell asserts in conclusory fashion that he exhausted all available administrative remedies, it is unclear from the facts articulated in the complaint whether McDowell fully and properly presented to prison officials all of the claims raised in this action.

This action was initiated by McDowell by the filing of a *pro se* complaint on March 10, 2015. (Case No. 1:15-cv-00487, Doc. 1). The named defendants include Warden Deparlos, Deputy Warden Shoemaker, Lieutenant Entz, Counselor Barns, Lieutenant Rogers, Sergeant White, CO Scrobel, CO Johnson, and Lycoming County Prison. The complaint seeks declaratory judgment and compensatory and punitive damages. The defendants have appeared and moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Case No. 1:15-cv-00487, Doc. 32). The motion is fully briefed and ripe for disposition. (Case No. 1:15-cv-00487, Docs. 33, 34).

Prior to filing his federal complaint in this action, McDowell instituted suit in state court, filing a complaint in the Court of Common Pleas for Lycoming County on July 7, 2014. (Case No. 1:15-cv-00963, Doc.

1-1). McDowell did not attempt to serve the state court complaint until April 2015, nine months after the state lawsuit was initiated. (Case No. 1:15-cv-00963, Doc. 1). On April 20, 2015, the defendants received actual notice of the state court action when copies of the state complaint were delivered to the prison by certified mail from the plaintiff. (*Id.*). On May 18, 2015, the defendants removed the state court action to this federal district court pursuant to 28 U.S.C. §§ 1441 and 1446. (*Id.*). On September 3, 2015, the two actions were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, with this action, Case No. 1:15-cv-00487, designated as the lead case. (Case No. 1:15-cv-00487, Doc. 39; Case No. 1:15-cv-00963, Doc. 12). The facts alleged and claims raised in the state court complaint are substantively identical to the facts alleged and claims raised in the federal complaint.[1] (*Compare* Case No. 1:15-cv-00487, Doc. 1, *with* Case No. 1:15-cv-00963, Doc. 1-1). The defendants filed a substantively identical Rule 12(b)(6) motion to dismiss in both cases, advancing the same grounds for dismissal. (*Compare* Case No. 1:15-cv-

---

[1] In his state complaint, McDowell also identified Section I, Article 8, of the Pennsylvania Constitution as a basis for his action for damages. But there is no private cause of action for damages under the Pennsylvania Constitution. *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x 681, 687 (3d Cir. 2011).

00487, Docs. 32, 33, *with* Case No. 1:15-cv-00963, Docs. 4, 5). McDowell filed a substantively identical opposition brief in both cases.[2] (*Compare* Case No. 1:15-cv-00487, Doc. 34, *with* Case No. 1:15-cv-00963, Doc. 6). The complaints in both of these consolidated actions are substantively coterminous, as are the respective motions to dismiss by the defendants. Because the state complaint and related motion to dismiss are coterminous with the federal complaint and related motion to dismiss, and the removed state action and related motion to dismiss were both administratively terminated upon consolidation with this lead case, this report will address the motion to dismiss the federal complaint only.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell*

---

[2] Indeed, most of the text is duplicated word for word.

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

McDowell has brought this federal civil rights action under 42 U.S.C.

§ 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of*

*Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible for

the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005).

Here, McDowell asserts several civil rights claims stemming from the March 30, 2014, incident. First, he claims that CO Scrobel and CO Johnson violated his Fifth, Eighth, and Fourteenth Amendment rights by failing to intervene or otherwise prevent Welshans from assaulting him, and by failing to respond quickly enough to separate them once the assault commenced. Second, McDowell claims that CO Scrobel fabricated misconduct charges against him and supervisors Sergeant White and Lieutenant Rogers endorsed the fabricated misconduct report, all in violation of his Fourteenth Amendment substantive due process rights. Third, McDowell claims that the prison disciplinary committee—Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barns—violated his Fourteenth Amendment procedural due process rights and his Sixth Amendment right to confront witnesses by refusing to call CO Scrobel to testify at McDowell's disciplinary hearing, denying him the opportunity to confront and cross-examine Scrobel, upon whose written report McDowell ultimately was found guilty of instigating a fight and disrupting prison routine. Fourth, McDowell claims that, while in disciplinary custody in the SMU, he was subjected to strip searches and body searches, and his cell

was searched every night, in violation of his Fourth Amendment rights. Fifth, McDowell asserts a Fourteenth Amendment substantive due process claim based on denial of recreation time outside his cell, "depriv[ation] of meaningful hygiene," and sleep disruption while held in disciplinary custody in the SMU. Finally, McDowell seeks to hold Warden Deparlos and the Lycoming County Prison itself vicariously liable for the allegedly unconstitutional conduct of their subordinates.

## A. Supervisory and Municipal Liability Claims

The Court will begin with the last of these sets of claims. McDowell seeks to hold the warden and the prison itself liable for the allegedly unconstitutional conduct of their subordinates.

But "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and

> acquiescence. Allegations of participation or actual
> knowledge and acquiescence, however, must be made
> with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### 1. Warden Deparlos

The complaint fails to allege any personal involvement whatsoever by Warden Deparlos. The only facts alleged with respect to Deparlos concern his supervisory role as warden of the prison where the alleged violations took place. It is well-settled that if a prison official's only involvement is investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official. *See id.* at 1208. Indeed, as the plaintiff himself has explicitly admitted in his complaint, "Warden Deparlos is not directly res[p]onsible for the Due Process violations suffered by the Plaintiff." (Case No. 1:15-cv-00487, Doc. 1, at 12).

Accordingly, it is recommended that all claims against Warden Deparlos be dismissed for failure to state a claim.

### 2. Lycoming County Prison

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. As a matter of law, Lycoming County Prison is not a "person" subject to suit under § 1983. *See Beaver v. Union County Pennsylvania*, 619 Fed. App'x 80, 83 (3d Cir. 2015) (per curiam) ("The prison may not be considered a 'person' subject to suit under 42 U.S.C. § 1983."); *Phippen v. Lycoming County Jail*, No. 01-CV-2040, 2002 WL 34252063, at *1 (M.D. Pa. Mar. 4, 2002) (finding Lycoming County Prison was not a proper § 1983 defendant). However, in light of McDowell's status as an incarcerated *pro se* plaintiff, the Court will construe his claims against the prison as having been asserted against Lycoming County itself, which is such a municipality subject to liability as a "person" under § 1983. *See Monell*, 436 U.S. at 694; *Mullholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants).

But "[u]nder *Monell*, a municipality cannot be subjected to liability

solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The complaint in this case does not identify any such policy or custom adopted or promulgated by Lycoming County, nor by its prison.

Accordingly, it is recommended that all claims against Lycoming County (or Lycoming County Prison) be dismissed for failure to state a

claim.

## B. Fourteenth Amendment Due Process Claims

As this Court has previously explained:

> Pretrial detainees do not stand on the same footing as convicted inmates. For the latter, punishment—both for purposes of deterrence and retribution—and rehabilitation are appropriate adjuncts of imprisonment, and the courts will not interfere with reasonable means adopted to achieve these goals. In contrast, the pretrial detainee is presumed innocent until proven guilty and is not to be punished or subjected to rehabilitation before he is tried and convicted of a crime. Hence, the only constitutional purpose of incarceration for the pretrial detainee is the detention itself; the pretrial detainee should not be subject to punitive conditions nor forced to participate in rehabilitative programs.

> However, even if a sanction, restriction, or condition can be viewed as having a punitive effect on the pretrial detainee, it is constitutional if it also furthers the alternative governmental purpose of maintaining custody, maintaining prison security, or maintaining internal order and discipline within the institution. A pretrial detainee constitutionally need not and, as a practical matter, cannot be provided with a normal civilian life while incarcerated awaiting trial. Before being held as a pretrial detainee, the individual has been arrested on probable cause and the judiciary has determined that there exists a prima facie case against him. Moreover, since the detainee was not released on his own recognizance, the requirement of bail indicates a concern for whether the pretrial detainee will appear at his trial and/or his probable dangerousness to the community. Hence, the pretrial detainee is lawfully imprisoned. Thus, while there are differences in the

> rights enjoyed by pretrial detainees as opposed to convicted prisoners, lawful imprisonment by its nature requires a dilution of the rights and privileges enjoyed by the general public outside the prison walls.

*Padgett v. Stein*, 406 F. Supp. 287, 295 (M.D. Pa. 1975) (citations omitted).

### 1. Failure-to-Protect Claims

McDowell claims that CO Scrobel and CO Johnson violated his Fourteenth Amendment substantive due process rights by failing to intervene to separate the two inmates or take other preventative measures before Welshans physically assaulted McDowell, and by taking too long to respond once the assault commenced.

"A detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded to convicted prisoners . . . ." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988) ("*Colburn I*"); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (pretrial detainees have an additional due process right to freedom from punishment). "[P]rison administrators 'are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves.'"

*Colburn I*, 838 F.2d at 668 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). That said, "a prison custodian is not the guarantor of a prisoner's safety." *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1115 (3d Cir. 1988).

"[T]he standard for violations of the Eighth Amendment based on nonmedical conditions of confinement . . . would also apply to . . . pretrial detainees through the Due Process Clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303–04 (1991)). To state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* (quoting *Seiter*, 501 U.S. at 298, 303–04). To satisfy the former, subjective component of a conditions-of-confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 & n.4 (1994). To satisfy the latter, objective component, a plaintiff must allege conditions that,

either alone or in combination, deprive him or her of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, or personal safety. *See Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out a constitutional claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Third Circuit has elaborated on the deliberate indifference standard in the context of suits against guards for failure to protect an inmate from harm caused by other inmates, stating that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate." *Young*, 960 F.2d at 361. The term "should have known" is a term of art, which

> [d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . . , though something less than subjective appreciation of that risk. The "strong likelihood" of [harm] must be "so obvious that a lay person would easily recognize the necessity for" preventative action. [T]he risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the

welfare of his or her charges.

*Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir.

1991) ("*Colburn II*")) (citation omitted, alterations in original).

Here, McDowell alleges that CO Scrobel and CO Johnson, stationed

in a nearby control room, should have been able to hear McDowell and

Welshans quarrelling in the day room. He does not allege any other facts

to suggest that Welshans articulated any specific threat against McDowell

that should have alerted the corrections officers. He does not allege any

prior history between himself and Welshans, nor any complaints about

Welshans communicated by McDowell to these or other corrections officers

that would have alerted them that Welshans posed a threat to McDowell.

Indeed, based on the allegations of the complaint, the incident in which

McDowell was injured appears to have been a single, isolated, spontaneous

occurrence, and these defendants had no reason to know prior to the

incident that Welshans was about to assault McDowell. Based on the facts

alleged in the complaint, the failure to CO Scrobel and CO Johnson to

predict and prevent the assault on McDowell by another inmate does not,

as a matter of law, rise to the level of deliberate indifference. *See Jones v.

Beard*, 145 Fed. App'x 743, 745–46 (3d Cir. 2005) (per curiam); *Parker v.*

*C/O Mulderig*, No. CIV. A. 92-2645, 1993 WL 44275, at *4 (E.D. Pa. Feb. 17, 1993).

McDowell further alleges that CO Scrobel and CO Johnson should have intervened more quickly once the fight began. Instead of immediately intervening, they called for assistance and waited until a supervisor and additional officers arrived to assist in retaking control of the situation. As the complaint acknowledges, this was the established protocol of the facility. Again, as a matter of law, this alleged conduct of CO Scrobel and CO Johnson does not rise to the level of deliberate indifference. *See Parker*, 1993 WL 44275, at *4–*5; *see also Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (noting that unarmed prison guards "had no duty to intervene" physically in a fight between inmates).

At most, McDowell has alleged facts to support a claim of negligence against CO Scrobel and CO Johnson, but negligence is not cognizable under 42 U.S.C. § 1983. *See Parker*, 1993 WL 44275, at *5.

Accordingly, it is recommended that McDowell's Fourteenth Amendment failure-to-protect claims against CO Scrobel and CO Johnson be dismissed for failure to state a claim.

### 2. Allegedly Fabricated Misconduct Report and Related Disciplinary Proceedings

McDowell claims that the charging officer, CO Scrobel, fabricated the misconduct charges at the orders of an unidentified supervisor to make it appear that McDowell instigated the assault, and that supervising corrections officers Sergeant White and Lieutenant Rogers endorsed the allegedly fabricated misconduct report despite having viewed video evidence that contradicted it, in violation of his Fourteenth Amendment substantive due process rights. McDowell further claims that the prison disciplinary committee—Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barns—violated his Fourteenth Amendment procedural due process rights by refusing to permit McDowell to confront and cross-examine CO Scrobel at his disciplinary hearing. McDowell ultimately was found guilty of instigating a fight and disrupting prison routine based upon CO Scrobel's written misconduct report.

Because a pretrial detainee has not been convicted of the offense for which he is detained, he possesses a substantive due process right to be free from punishment. *Bell*, 441 U.S. at 535 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilty in accordance with due process of law."); *Bistrian v. Levi*, 696 F.3d 352,

373 (3d Cir. 2012). But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537; *see also Bistrian*, 696 F.3d at 373. "For example, conditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bistrian*, 696 F.3d at 373.

> [T]he Government must be able to take steps to maintain security and order at the institution . . . . Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. [I]n addition to ensuring the detainee's presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Bell*, 441 U.S. at 540 (footnote omitted). "Under *Bell*, a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian*, 696 F.3d at 373 (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d

Cir. 2007)) (internal quotation marks omitted). In determining whether a restriction or condition is reasonably related to an institution's interest in maintaining security and order, courts must defer to the expertise of prison officials unless it is clear that they have overreacted. *See Bell*, 441 U.S. at 540 n.23.

McDowell does not allege any express statement by the defendants or others to suggest that the misconduct report and resultant disciplinary proceedings were intended to punish him for the crime for which he was being detained. He does, however, allege that the misconduct report itself was fabricated by CO Scrobel, and that Sergeant White and Lieutenant Rogers endorsed it with knowledge that it was fabricated and contradicted by surveillance video footage.

The filing of a false misconduct report, in and of itself, does not violate an inmate's due process rights. "The general rule . . . provides that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" *Brown v. Hannah*, 850 F. Supp. 2d 471, 475 (M.D. Pa. 2012) (quoting another source). "[D]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend

against the allegedly falsified evidence and groundless misconduct reports. Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002); *see also Brown*, 850 F. Supp. 2d at 476 ("[A prison inmate] has the right not to be deprived of a protected liberty interest without due process of law. Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.") (internal quotation marks omitted).

Here, the allegedly fabricated misconduct report was issued on April 1, 2014, and McDowell was transferred to the SMU that same day, pending his disciplinary hearing. He remained in administrative custody in the SMU for fifteen days until his disciplinary hearing was held on April 16, 2014. "'Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the [SMU] without explanation or review of their confinement.' Thus, procedural due process requires prison officials to 'provide detainees who are transferred into more restrictive housing, for administrative purposes only, an explanation

of the reason for their transfer as well as an opportunity to respond.'" *Bistrian*, 696 F.3d at 375 (quoting *Stevenson*, 495 F.3d at 69–70) (citation and brackets omitted). McDowell does not allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely.

Following the disciplinary hearing, at which McDowell was found guilty of instigating a fight and disrupting prison routine, the plaintiff was sanctioned with an additional fifteen days of disciplinary confinement, including nine more days in the SMU and six days in a disciplinary housing unit. "The degree of process required [under the Fourteenth Amendment] varies depending on the reason for the transfer [to more restrictive housing], with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Stevenson*, 495 F.3d at 70. In the context of disciplinary proceedings, a pretrial detainee is entitled to: (1) written notice of the misconduct charges at least twenty-four hours before the disciplinary hearing; (2) a written statement by the factfinder as to the

evidence relied on and the reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence in his defense when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974); *see also Stevenson*, 495 F.3d at 70–71 (holding that *Wolff* governed prison disciplinary proceedings against pretrial detainees). However, inmates do not hold a constitutional right to confrontation and cross-examination in disciplinary proceedings, because "[i]f confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls." *Wolff*, 418 U.S. at 567–68; *see also Flanagan v. Shively*, 783 F. Supp. 922, 930 (M.D. Pa. 1992) ("Prison disciplinary hearings are 'intended to be informal and expeditious . . . . Evidentiary standards are therefore relaxed; inmates have no right to confrontation and cross-examination or to counsel.'") (quoting another source) (ellipsis in original).

The only procedural defect in the disciplinary hearing alleged by McDowell is the disciplinary committee's refusal to call CO Scrobel, the charging officer, to testify at the hearing. The disciplinary committee

relied on CO Scrobel's written misconduct report in finding McDowell guilty of instigating a fight and disrupting prison routine, but declined to call Scrobel to testify. McDowell contends that he was thus "denied an opportunity to challenge the report as written by this officer." (Case No. 1:15-cv-00487, Doc. 1, at 10). But, as noted above, under *Wolff*, due process requires only that an inmate be permitted to call a witness who will testify "'in his defense,' (i.e. produce affirmatively supportive evidence) and not to confront or impeach [an adverse] witness." *Owens v. Libhart*, 729 F. Supp. 1510, 1513 (M.D. Pa. 1990); *see also Wolff*, 418 U.S. at 567–68. Based on the allegations of the complaint, McDowell did not seek to present the affirmatively supportive testimony by CO Scrobel, but to confront him as an adverse witness and impeach his written misconduct report.

As a matter of law, McDowell has failed to state either a substantive or procedural due process claim with respect to the allegedly fabricated misconduct report and related disciplinary proceedings against him. Accordingly, it is recommended that McDowell's Fourteenth Amendment due-process claims against CO Scrobel, Sergeant White, Lieutenant Rogers, Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barns be dismissed for failure to state a claim.

### 3. SMU Cell-Conditions Claims

McDowell asserts a Fourteenth Amendment substantive due process claim based on cell-conditions during his thirty-day stay in the SMU. McDowell alleges that "[t]here was no day time activity or recreation for the Plaintiff while in SMU. Plaintiff was deprived of meaningful hygiene and subjected to disrupted sleep patterns." (Case No. 1:15-cv-00487, Doc. 1, at 11).

As previously noted, to state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Kost*, 1 F.3d at 188 (quoting *Seiter*, 501 U.S. at 298, 303–04). Under this test, only "extreme deprivations" are sufficient to make out a constitutional claim. *See Hudson*, 503 U.S. at 9.

McDowell alleges that he was denied "day time activity or recreation" during his thirty-day stay in the SMU. "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of . . . inmates." *Peterkin v. Jeffes*, 855 F.2d 1021, 1031

(3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 1999 (9th Cir. 1979)). But "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *Fantone v. Herbik*, 528 Fed. App'x 123, 127 (3d Cir. 2013) (per curiam). The "lack of exercise can only rise to a constitutional violation if the deprivation is such that "movement is denied [to such extent that] muscles are allowed to atrophy [and] the health of the individual is threatened." *Banks v. Niclkin*, Civil Action No. 1:06-CV-1127, at *7 (M.D. Pa. Feb. 2, 2011) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)); *see also Tapp v. Proto*, 718 F. Supp. 598, 620 (E.D. Pa. 2010) (quoting *French* in the pretrial detention context). McDowell has failed to allege any adverse medical effects suffered as a result of his thirty-day stint in the SMU. Moreover, courts of this circuit have found even longer periods of confinement with limited or no opportunity for out-of-cell recreation or exercise to be constitutional. *See Fantone*, 528 Fed. App'x at 126–27 (denial of outside exercise for forty-six days); *Carter v. Thomas*, Civil No. 3:12-CV-1955, 2014 WL 4792600, at *4 (M.D. Pa. Sept. 23, 2014) (two-month denial of recreation without evidence of resulting tangible physical harm); *Harris v. Barone*, No. 1:11-cv-256, 2014 WL 2694005, at *4–*5 (W.D. Pa. June 13, 2014) (82-day restriction on outdoor

exercise permissible in the absence of adverse medical impact and in light of inmate's misconduct history); *Gregorio v. Aviles*, Civil No. 11-2771 (WJM), 2013 WL 1187096, at *6 (D.N.J. Mar. 20, 2013) (denial of outside recreation for ten months during which pretrial detainee unit was on lockdown); *Clark v. Aviles*, Civil No. 11-2156 (SDW), 2011 WL 5080260, at *4 (D.N.J. Oct 26, 2011) (same).

McDowell alleges that he was "deprived of meaningful hygiene and subjected to disrupted sleep patterns" during his thirty-day stay in the SMU. But beyond the vague and conclusory allegations that he was "deprived of meaningful hygiene" and suffered from "disrupted sleep patterns," McDowell has failed to allege any facts whatsoever that would allow this Court to draw a reasonable inference that he "suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Kost*, 1 F.3d at 188 (quoting *Seiter*, 501 U.S. at 298, 303–04). With respect to this claim, the complaint pleads nothing more than "naked assertions devoid of further factual enhancement," and thus it fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets and internal quotation marks omitted).

Accordingly, it is recommended that McDowell's Fourteenth Amendment cell-conditions claims be dismissed for failure to state a claim.

## C. Other Constitutional Claims

### 1. *Fifth Amendment Due Process Claim*

McDowell appears to claim that CO Scrobel and CO Johnson violated his Fifth Amendment due process rights. But the due process clause of the Fifth Amendment only applies to the acts of the federal government; it does not apply to the acts or conduct of state or local government officials. *See Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, at 237–38 (M.D. Pa. 1995); *see also Beahm v. Burke*, 982 F. Supp. 2d 451, 458 (E.D. Pa. 2013) (county officials). Accordingly, it is recommended that McDowell's Fifth Amendment due process claims be dismissed for failure to state a claim.

### 2. *Eighth Amendment Cruel-and-Unusual Punishment Claims*

McDowell appears to have based his failure-to-protect and SMU cell-conditions claims on the Eighth Amendment, as well as the Fourteenth Amendment. But "[w]hile the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581

(3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). In light of McDowell's references to the Fourteenth Amendment as a basis for his claims, his reliance on the Eighth Amendment is entirely superfluous. *See id.* (noting that "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether Fourteenth Amendment provides greater protections"); *see also Battista v. Cannon*, 934 F. Supp. 400, 405 (M.D. Fla. 1996) (striking reference to violation of the Eighth Amendment from a complaint that also alleged violation of a pretrial detainee's Fourteenth Amendment rights). Accordingly, it is recommended that McDowell's Eighth Amendment cruel-and-unusual-punishment claims be dismissed for failure to state a claim.

### 3. Sixth Amendment Claim

McDowell claims that the disciplinary committee's refusal to call CO Scrobel as a witness violated McDowell's Sixth Amendment right to confront and cross-examine witnesses against him. But it is well-established that the Sixth Amendment right to confrontation and cross-examination is limited to *criminal* prosecutions. *See Hannah v. Larche*,

363 U.S. 420, 440 n.16 (1960); *United States v. Zucker*, 161 U.S. 475, 481 (1896); *Renchenski v. Williams*, 622 F.3d 315, 336 (3d Cir. 2010); *DeWalt v. Barger*, 490 F. Supp. 1262, 1272 (M.D. Pa. 1980); *see also Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) ("[P]rison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment."). Accordingly, it is recommended that McDowell's Sixth Amendment confrontation and cross-examination claim be dismissed for failure to state a claim.

### 4. Fourth Amendment Claim

McDowell claims that, while in disciplinary custody in the SMU, he was subjected to strip searches and body searches, and his cell was searched every night, in violation of his Fourth Amendment rights. But it is well-established that, at best, pretrial detainees have a "diminished expectation of privacy after commitment to a custodial facility," and "[i]t may well be argued that a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person." *See Bell*, 441 U.S. at 556–57. Thus, unannounced searches of a

pretrial detainee's cell at irregular intervals do not violate the Fourth Amendment, even if conducted outside the inmate's presence. *See id.* at 555–57; *see also Block v. Rutherford*, 468 U.S. 576, 589–91 (1984). Moreover, even if pretrial detainees retain some reduced expectation of privacy protected by the Fourth Amendment after commitment to a corrections facility, the strip searches and body searches complained of by the plaintiff are not unreasonable in light of the security concerns inherent in the corrections setting. *See Bell*, 441 U.S. at 558–560 ("A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record and in other cases.") (citation omitted);[3] *see also Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1518–23 (2012) (visual strip search of pretrial detainees held on minor, non-indictable offenses, without reasonable

---

[3] Indeed, in *Bell*, the Supreme Court found that routine visual body-cavity searches of inmates were not unreasonable in a pretrial detention setting. *Bell*, 441 U.S. at 558–60. McDowell has failed to allege any facts regarding the "strip searches" and "body searches" to which he was subjected to suggest that they were more invasive than the visual body-cavity searches permitted under *Bell*.

suspicion that the particular inmate sought to conceal contraband, did not violate Fourth or Fourteenth Amendment); *Langella v. County of McKean*, 2010 WL 3824222, at *11–*12 (W.D. Pa. Sept. 23, 2010) (same); *Ostrander v. Horn*, 145 F. Supp. 2d 614, 620 (M.D. Pa. 2001) ("Inmates . . . do not have a Fourth Amendment right to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner."); *Wilson v. Shannon*, 982 F. Supp. 337, 339–40 (M.D. Pa. 1997) (repeated strip searches of prisoner did not violate Fourth Amendment). Accordingly, it is recommended that McDowell's Fourth Amendment illegal search claim be dismissed for failure to state a claim.

## D. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it is not clear that amendment would be futile, nor is there any basis to believe it would be inequitable. It is therefore recommended that McDowell be granted leave to file an amended

complaint within a specified time period following dismissal of the complaint.

### E. PLRA "Three Strikes" Warning

The plaintiff is hereby notified that a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If this recommended disposition is adopted by the presiding United States District Judge, the dismissal of this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure may constitute a "strike" under 28 U.S.C. § 1915(g), and the accumulation of additional strikes may bar the plaintiff from proceeding *in forma pauperis* in later cases absent a showing of imminent danger. *See generally Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013) (articulating Third Circuit standard for application of § 1915(g) "three strikes" rule).

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.     The defendants' motion to dismiss (Case No. 1:15-cv-00487, Doc. 32) the complaint in this lead case be **GRANTED**;

2.     The complaint (Case No. 1:15-cv-00487, Doc. 1) be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

3.     The Plaintiff be granted leave to file an amended complaint within a specified period of time following dismissal of the complaint;

4.     The Clerk be directed to **CLOSE** this case if an amended complaint is not timely filed; and

5.     This matter be remanded to the undersigned for further proceedings if necessary.

**Dated: January 7, 2016**                    *s/ Joseph F. Saporito, Jr.*
                                            **JOSEPH F. SAPORITO, JR.**
                                            **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

REUBEN MCDOWELL,

      Plaintiff,

        v.

KEVIN A. DEPARLOS, Warden, et al.

      Defendants.

CIVIL ACTION NOS. 1:15-cv-00487

(CALDWELL, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated January 7, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: January 7, 2016                    *s/ Joseph F. Saporito, Jr.*
                                          **JOSEPH F. SAPORITO, JR.**
                                          **United States Magistrate Judge**