# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REUBEN MCDOWELL, | |
| Plaintiff, | CIVIL ACTION NOS. 1:15-cv-00487 |
| v. | (CALDWELL, J.) |
| | (SAPORITO, M.J.) |
| KEVIN A. DEPARLOS, Warden, et al. | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights action, which comes before the Court on motions to dismiss by the defendants. For the reasons that follow, it is recommended that the motions be granted in part and denied in part, and that the plaintiff's requests for declaratory and injunctive relief be denied *sua sponte* as moot.

## I. STATEMENT OF THE CASE

In his amended complaint, plaintiff Reuben McDowell alleges that various Lycoming County Prison officials violated his Fourteenth Amendment due process rights in connection with a March 30, 2014, incident in which McDowell was assaulted by another inmate, and in connection with subsequent disciplinary proceedings against McDowell. At

the time of the assault, McDowell was a pretrial detainee at Lycoming County Prison, awaiting trial on multiple felony charges. He was subsequently convicted and sentenced to serve an aggregate term of 26 to 64 years in prison. McDowell is currently incarcerated at SCI Forest, located in Forest County, Pennsylvania.

On the evening of March 30, 2014, while confined as a pretrial detainee, McDowell was assaulted by another inmate, Jason Welshans, in the day room of J-Block at the Lycoming County Prison. As a result of his injuries, McDowell was transported to a hospital, where he was found to have several broken bones in his face around the lower orbital area of his right eye. Surgery was performed three days later to insert a permanent prosthetic to stabilize the fractured orbital area. McDowell alleges that, in addition to pain and suffering he endured, he is permanently disfigured as a result of the assault, he must rely on corrective lenses to see, and he has suffered mental and emotional anguish as a result of his injury and disfigurement.

McDowell contends that his federal civil rights were violated by two

corrections officers, CO Travis Stroble[1] and CO Johnson (whose first name is unknown to the plaintiff), who were present but failed to intervene to prevent the assault or halt it before McDowell suffered his grievous injuries. In the moments leading up to the assault, both officers were on duty, either on the block or in a nearby control room, where McDowell alleges they would have seen and heard the two inmates quarrelling. McDowell further alleges that, pursuant to a prison policy, Stroble and Johnson did not respond by intervening immediately, but rather they waited until a supervisor and additional officers arrived to assist in retaking control of the situation. Only after the additional officers arrived to assist did Stroble and Johnson enter the day room to separate the inmates and reestablish control of the area. McDowell claims that Stroble and Johnson violated his Fourteenth Amendment substantive due process rights by failing to intervene to separate the two inmates or take other preventative measures before Welshans physically assaulted McDowell, and by taking too long to respond once the assault commenced.

Immediately following the assault, Welshans was transferred to the

---

[1] The original and amended complaints identified this defendant by the misnomer "Travis Scrobel." In this report, we use the correct spelling of his last name, Stroble, provided by defense counsel in his motion papers.

prison's Special Management Unit ("SMU") pending a hearing on misconduct charges. Upon his release from the hospital on March 31, 2014, McDowell was returned to Lycoming County Prison and placed in his original cell. Initially, no misconduct charges were issued against McDowell. But one day later, on April 1, 2014, McDowell was issued a misconduct for the incident in which he was injured and transferred to the SMU pending a disciplinary hearing. McDowell claims that the charging officer, CO Stroble, fabricated the misconduct charges at the orders of one of his supervising corrections officers—Sergeant M. White or Lieutenant Josh Rogers—to make it appear that McDowell instigated the assault. He claims that both of the supervising corrections officers, White and Rogers, endorsed the allegedly fabricated misconduct report despite having viewed security camera footage of the incident that McDowell claims should have made clear that the misconduct report was inaccurate.

After fifteen days of administrative custody in the SMU, McDowell was brought before the prison disciplinary committee on April 16, 2014, for a hearing on the misconduct charges against him. The committee members included Deputy Warden Brad A. Shoemaker, Lieutenant H. Entz, and Corrections Counselor Ryan Barnes. McDowell claims that his Fourteenth

Amendment procedural due process rights were denied because he was not provided with a copy of statements collected from inmate-witnesses by White and Rogers during their investigation, because two of the three disciplinary hearing committee members had viewed a video of the incident before the hearing commenced, because one of the disciplinary committee members was also the assigned grievance officer who investigated and responded to all of McDowell's grievances concerning the incident, and because he was denied the assistance of a staff representative to help him prepare for his disciplinary hearing.[2]

Ultimately, McDowell was found guilty of instigating a fight and disrupting prison routine. He was sanctioned with an additional fifteen days of disciplinary confinement. McDowell appealed this disciplinary conviction to Warden Kevin A. Deparlos, who upheld the disciplinary committee's findings and sanction. McDowell appealed the warden's decision to the Lycoming County Board of County Commissioners, which upheld the warden's decision. While in disciplinary custody in the SMU, McDowell was subjected to nightly strip searches and denied daytime

---

[2] In particular, McDowell claims his confinement in administrative custody prevented him from accessing any witnesses to the incident, whom a staff representative would have been able to interview.

recreation outside his cell.

This action was initiated by McDowell by the filing of a *pro se* complaint on March 10, 2015, alleging the violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 1).[3] The named defendants included Warden Deparlos, Deputy Warden Shoemaker, Lieutenant Entz, Counselor Barnes, Lieutenant Rogers, Sergeant White, CO Stroble, CO Johnson, and Lycoming County Prison. The defendants moved to dismiss the action for failure to state a claim upon which relief can be granted, and on February 3, 2016, the action was dismissed with leave to file a curative amendment. (Doc. 43; *see also* Doc. 40).

On March 3, 2016, McDowell filed his amended complaint, alleging the violation of his rights under the Fourteenth Amendment only. (Doc. 46). The amended complaint dropped Lycoming County Prison as a named defendant, and it added no new defendants. In an effort to cure the pleading defects that caused his original complaint to be dismissed,

---

[3] McDowell also instituted suit in state court, filing a substantively identical state court complaint. In May 2015, the defendants timely removed that state court action to this federal district court, and in September 2015, the two actions were consolidated with this action designated as the lead case. (Doc. 39).

McDowell provided more detailed factual allegations concerning both the March 2014 assault and his subsequent disciplinary proceedings.

On March 31, 2016, the defendants filed a Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim, and they filed a brief in support of the motion on April 13, 2016. (Doc. 51; Doc. 56).[4] On May 31, 2016, McDowell filed a brief in opposition to the motion to dismiss. (Doc. 70). The matter is now ripe for disposition.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the

---

[4] Because CO Stroble was served with process at a later date than the other defendants, he has filed his own separate motion to dismiss and supporting brief. (Doc. 67; Doc. 68). But CO Stroble is represented by the same attorney and his motion papers merely join in the motion and legal arguments of the other defendants.

Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

McDowell has brought this federal civil rights action under 42 U.S.C.

§ 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of*

*Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible for

the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005).

Here, McDowell asserts several civil rights claims stemming from the March 30, 2014, incident. First, he claims that CO Stroble and CO Johnson violated his Fourteenth Amendment substantive due process rights by failing to intervene or otherwise prevent Welshans from assaulting him, and by failing to respond quickly enough to separate them once the assault commenced. Second, McDowell claims that CO Stroble fabricated misconduct charges against him and supervisors Sergeant White and Lieutenant Rogers endorsed the fabricated misconduct report, all in violation of his Fourteenth Amendment substantive due process rights. Third, McDowell claims that his disciplinary hearing before the prison disciplinary committee—Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barnes—violated his Fourteenth Amendment procedural due process rights because: (a) he was not provided with a copy of statements collected from inmate-witnesses by White and Rogers during their investigation; (b) he was denied an impartial disciplinary hearing due to the committee members' prior knowledge of the incident; and (c) he was denied the assistance of a staff representative to help him prepare for his disciplinary hearing. Fourth, McDowell asserts a Fourteenth Amendment substantive due process claim based on his being subjected to

nightly strip searches and the denial of daytime recreation outside his cell while held in disciplinary custody in the SMU. Finally, McDowell seeks to hold Warden Deparlos vicariously liable for the allegedly unconstitutional conduct of his subordinates.

## A. Declaratory and Injunctive Relief

As a preliminary matter, we must consider whether McDowell's requests for unspecified declaratory and injunctive relief are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 246 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). A prisoner's transfer from the prison complained of generally moots his claims for prospective injunctive or declaratory relief. *Sutton*, 323 F.3d at 248; *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981). Such claims are not mooted when "a challenged action is (1) too short in duration to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again." *Sutton*, 323 F.3d at 248 (alteration and internal quotation marks omitted). A

prisoner's claim for damages is not mooted by a transfer. *Id.* at 249; *Allah v. Seiverling*, 229 F.3d 220, 222 n.2 (3d Cir. 2000); *Weaver*, 650 F.2d at 27 n.13.

At the time of the events giving rise to this action, McDowell was incarcerated as a pretrial detainee at Lycoming County Prison, located in Lycoming County, Pennsylvania. On July 25, 2016, the Court received and docketed a letter from McDowell advising that he had been transferred to SCI Camp Hill, located in Cumberland County, Pennsylvania. (Doc. 71). Accordingly to the publicly available Pennsylvania Department of Corrections inmate locator, his is currently incarcerated at SCI Forest, located in Forest County, Pennsylvania. All of the defendants are employed at Lycoming County Prison. As a result, McDowell's requests for declaratory and injunctive relief are clearly moot.

Accordingly, it is recommended that the Court *sua sponte* dismiss McDowell's requests for declaratory and injunctive relief.

### B. Supervisory Liability Claims

McDowell seeks to hold the warden liable for the allegedly unconstitutional conduct of his subordinates. But "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each

named defendant must be shown, via the complaint's allegations, to have

been personally involved in the events or occurrences which underlie a

claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014)

(citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have *personal involvement* in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The complaint fails to allege any personal involvement whatsoever

by Warden Deparlos.[5] The only facts alleged with respect to Deparlos

concern his supervisory role as warden of the prison where the alleged

violations took place. It is well-settled that if a prison official's only

involvement is investigating or ruling on an inmate's grievance after the

incident giving rise to the grievance has occurred, there is no personal

involvement on the part of that official. *See id.* at 1208; *see also Brooks v.*

*Beard*, 167 Fed. App'x 923, 925 (3d Cir. 2006) (per curiam) (characterizing

---

[5] Indeed, as the plaintiff himself explicitly admitted in his original complaint, "Warden Deparlos is not directly res[p]onsible for the Due Process violations suffered by the Plaintiff." (Doc. 1, at 12).

such a claim as legally frivolous). "[T]he mere fact that an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." *Hennis v. Varner*, Civil Action No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014); *see also Moore v. Mann*, Civil No. 3:CV-13-2771, 2015 WL 3755045, at *4 (M.D. Pa. June 16, 2015) ("[T]he mere fact that [the defendant] may have learned about Plaintiff's claims through a piece of correspondence . . . is not enough to impute liability to [the defendant]. . . . [A]n allegation that an official ignored correspondence from an inmate . . . is insufficient to impose liability on the supervisory official."); *Adderly v. Eidem*, Civil No. 3:CV-11-0694, 2014 WL 643639, at *6 (M.D. Pa. Feb. 19, 2014) ("Simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate they had the requisite personal involvement.").

Accordingly, it is recommended that all claims against Warden Deparlos be dismissed for failure to state a claim.

## C. Fourteenth Amendment Due Process Claims

As this Court has previously explained:

Pretrial detainees do not stand on the same footing as convicted inmates. For the latter, punishment—both for purposes of deterrence and retribution—and rehabilitation are appropriate adjuncts of imprisonment, and the courts will not interfere with reasonable means adopted to achieve these goals. In contrast, the pretrial detainee is presumed innocent until proven guilty and is not to be punished or subjected to rehabilitation before he is tried and convicted of a crime. Hence, the only constitutional purpose of incarceration for the pretrial detainee is the detention itself; the pretrial detainee should not be subject to punitive conditions nor forced to participate in rehabilitative programs.

However, even if a sanction, restriction, or condition can be viewed as having a punitive effect on the pretrial detainee, it is constitutional if it also furthers the alternative governmental purpose of maintaining custody, maintaining prison security, or maintaining internal order and discipline within the institution. A pretrial detainee constitutionally need not and, as a practical matter, cannot be provided with a normal civilian life while incarcerated awaiting trial. Before being held as a pretrial detainee, the individual has been arrested on probable cause and the judiciary has determined that there exists a prima facie case against him. Moreover, since the detainee was not released on his own recognizance, the requirement of bail indicates a concern for whether the pretrial detainee will appear at his trial and/or his probable dangerousness to the community. Hence, the pretrial detainee is lawfully imprisoned. Thus, while there are differences in the rights enjoyed by pretrial detainees as opposed to convicted prisoners, lawful imprisonment by its nature requires a dilution of the rights and privileges enjoyed by the general public outside the prison walls.

*Padgett v. Stein*, 406 F. Supp. 287, 295 (M.D. Pa. 1975) (citations omitted).

### 1. Failure-to-Protect Claims

McDowell claims that CO Stroble and CO Johnson violated his Fourteenth Amendment substantive due process rights by failing to intervene to separate the two inmates or take other preventative measures before Welshans physically assaulted McDowell, and by taking too long to respond once the assault commenced.

"A detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded to convicted prisoners . . . ." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988) ("*Colburn I*"); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (pretrial detainees have an additional due process right to freedom from punishment). "[P]rison administrators 'are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Colburn I*, 838 F.2d at 668 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). That said, "a prison custodian is not the guarantor of a prisoner's safety." *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1115

(3d Cir. 1988).

"[T]he standard for violations of the Eighth Amendment based on nonmedical conditions of confinement . . . would also apply to . . . pretrial detainees through the Due Process Clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303–04 (1991)). To state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* (quoting *Seiter*, 501 U.S. at 298, 303–04). To satisfy the former, subjective component of a conditions-of-confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 & n.4 (1994). To satisfy the latter, objective component, a plaintiff must allege conditions that, either alone or in combination, deprive him or her of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, or personal safety. *See Rhodes v. Chapman*, 452

U.S. 337, 347–48 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out a constitutional claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Third Circuit has elaborated on the deliberate indifference standard in the context of suits against guards for failure to protect an inmate from harm caused by other inmates, stating that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate." *Young*, 960 F.2d at 361. The term "should have known" is a term of art, which

> [d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . . , though something less than subjective appreciation of that risk. The "strong likelihood" of [harm] must be "so obvious that a lay person would easily recognize the necessity for" preventative action. [T]he risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir. 1991) ("*Colburn II*")) (citation omitted, alterations in original).

In his amended complaint, McDowell has pleaded additional details regarding this incident, but he has added no new material facts. McDowell alleges that CO Stroble and CO Johnson, who were either on the block or in a nearby control room at the time, should have been able to hear McDowell and Welshans quarrelling in the day room. He does not allege any other facts to suggest that Welshans articulated any specific threat against McDowell that should have alerted the corrections officers. He does not allege any prior history between himself and Welshans, nor any complaints about Welshans communicated by McDowell to these or other corrections officers that would have alerted them that Welshans posed a threat to McDowell. Indeed, based on the allegations of the amended complaint, the incident in which McDowell was injured appears to have been a single, isolated, spontaneous occurrence, and these defendants had no reason to know prior to the incident that Welshans was about to assault McDowell. Based on the facts alleged in the amended complaint, the failure of CO Stroble and CO Johnson to predict and prevent the assault on McDowell by another inmate does not, as a matter of law, rise to the level of deliberate indifference. *See Jones v. Beard*, 145 Fed. App'x 743, 745–46 (3d Cir. 2005) (per curiam); *Parker v. C/O Mulderig*, No. CIV. A.

92-2645, 1993 WL 44275, at *4 (E.D. Pa. Feb. 17, 1993).

McDowell further alleges that CO Stroble and CO Johnson should have intervened more quickly once the fight began. Instead of immediately intervening, they called for assistance and waited until a supervisor and additional officers arrived to assist in retaking control of the situation. As the complaint acknowledges, this was the established protocol of the facility. Again, as a matter of law, this alleged conduct of CO Stroble and CO Johnson does not rise to the level of deliberate indifference. *See Parker*, 1993 WL 44275, at *4–*5; *see also Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (noting that unarmed prison guards "had no duty to intervene" physically in a fight between inmates).[6]

At most, McDowell has alleged facts to support a claim of negligence against CO Stroble and CO Johnson, but negligence is not cognizable under 42 U.S.C. § 1983. *See Parker*, 1993 WL 44275, at *5.

Accordingly, it is recommended that McDowell's Fourteenth Amendment failure-to-protect claims against CO Stroble and CO Johnson

---

[6] In his amended complaint, McDowell alleges that "supervisors are armed" with "pepper spray and tasers," and therefore prison staff could have intervened earlier, without "waiting for an army of officers to arrive." (Doc. 46 ¶ 70). But he has not alleged that either Stroble or Johnson is a supervisor, or that either officer was armed.

be dismissed for failure to state a claim.

### 2. Misconduct Report and Disciplinary Proceedings

McDowell claims that the charging officer, CO Stroble, fabricated the misconduct charges at the orders of an unidentified supervisor to make it appear that McDowell instigated the assault, and that supervising corrections officers Sergeant White and Lieutenant Rogers endorsed the allegedly fabricated misconduct report despite having viewed video evidence that contradicted it, in violation of his Fourteenth Amendment substantive due process rights. McDowell further claims that the prison disciplinary committee—Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barnes—violated his Fourteenth Amendment procedural due process rights because McDowell was not provided with a copy of inmate-witness statements collected by investigators, because he was denied an impartial disciplinary hearing,[7] and because he was denied the assistance of a staff representative to help him prepare for his disciplinary

---

[7] McDowell bases this claim on allegations that two of the three disciplinary hearing committee members viewed a video of the incident before the hearing commenced, and that one of the disciplinary committee members was also the assigned grievance officer who investigated and responded to McDowell's grievances concerning the incident.

hearing.[8] McDowell ultimately was found guilty of instigating a fight and disrupting prison routine based upon CO Stroble's written misconduct report.

Because a pretrial detainee has not been convicted of the offense for which he is detained, he possesses a due process right to be free from punishment. *Bell*, 441 U.S. at 535 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilty in accordance with due process of law."); *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012). But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537; *see also Bistrian*, 696 F.3d at 373. "For example, conditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bistrian*, 696 F.3d at 373.

> [T]he Government must be able to take steps to maintain security and order at the institution . . . . Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are

---

[8] McDowell claims his confinement in administrative custody prevented him from accessing any witnesses to the incident, whom a staff representative would have been able to interview.

> discomforting and are restrictions that the detainee
> would not have experienced had he been released while
> awaiting trial. [I]n addition to ensuring the detainee's
> presence at trial, the effective management of the
> detention facility once the individual is confined is a valid
> objective that may justify the imposition of conditions
> and restrictions of pretrial detention and dispel any
> inference that such restrictions are intended as
> punishment.

*Bell*, 441 U.S. at 540 (footnote omitted). "Under *Bell*, a particular measure

amounts to punishment when there is a showing of express intent to

punish on the part of detention facility officials, when the restriction or

condition is not rationally related to a legitimate non-punitive government

purpose, or when the restriction is excessive in light of that purpose."

*Bistrian*, 696 F.3d at 373 (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d

Cir. 2007)) (internal quotation marks omitted). In determining whether a

restriction or condition is reasonably related to an institution's interest in

maintaining security and order, courts must defer to the expertise of

prison officials unless it is clear that they have overreacted. *See Bell*, 441

U.S. at 540 n.23.

McDowell does not allege any express statement by the defendants or

others to suggest that the misconduct report and resultant disciplinary

proceedings were intended to punish him for the crime for which he was

being detained. He does, however, allege that the misconduct report itself was fabricated by CO Stroble, and that Sergeant White and Lieutenant Rogers endorsed it with knowledge that it was fabricated and contradicted by surveillance video footage.

The filing of a false misconduct report, in and of itself, does not violate an inmate's due process rights. "The general rule . . . provides that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" *Brown v. Hannah*, 850 F. Supp. 2d 471, 475 (M.D. Pa. 2012) (quoting another source). "[D]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002); *see also Brown*, 850 F. Supp. 2d at 476 ("[A prison inmate] has the right not to be deprived of a protected liberty interest without due process of law. Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of

a misconduct.") (internal quotation marks omitted).

Here, the allegedly fabricated misconduct report was issued on April 1, 2014, and McDowell was transferred to the SMU that same day, pending his disciplinary hearing. He remained in administrative custody in the SMU for fifteen days until his disciplinary hearing was held on April 16, 2014. "'Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the [SMU] without explanation or review of their confinement.' Thus, procedural due process requires prison officials to 'provide detainees who are transferred into more restrictive housing, for administrative purposes only, an explanation of the reason for their transfer as well as an opportunity to respond.'" *Bistrian*, 696 F.3d at 375 (quoting *Stevenson*, 495 F.3d at 69–70) (citation and brackets omitted). McDowell does not allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen days before his disciplinary hearing occurred, not indefinitely.

Following the disciplinary hearing, at which McDowell was found

guilty of instigating a fight and disrupting prison routine, the plaintiff was sanctioned with an additional fifteen days of disciplinary confinement. "The degree of process required [under the Fourteenth Amendment] varies depending on the reason for the transfer [to more restrictive housing], with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Stevenson*, 495 F.3d at 70. In the context of disciplinary proceedings, a pretrial detainee is entitled to: (1) written notice of the misconduct charges at least twenty-four hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence in his defense when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1974); *see also Stevenson*, 495 F.3d at 70–71 (holding that *Wolff* governed prison disciplinary proceedings against pretrial detainees).

In his amended complaint, McDowell has asserted a colorable claim that his disciplinary proceedings violated his procedural due process rights. First, the amended complaint alleges that McDowell was not

provided with "a reason for [the disciplinary committee's] decision to sanction the Plaintiff to . . . 30 days in [disciplinary lock-up]." (Doc. 46 ¶ 118). Discovery may reveal otherwise, but accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, McDowell has alleged sufficient facts to support a plausible claim that the disciplinary committee failed to provide him with "a written statement by the factfinder as to the evidence relied on and the reasons for the disciplinary action," in violation of his Fourteenth Amendment procedural due process rights. *See Wolff*, 418 U.S. at 564–65.

Second, the amended complaint alleges that McDowell was denied the assistance of a staff representative to help him prepare for his disciplinary hearing. (Doc. 46 ¶ 108). In particular, the amended complaint alleges that McDowell was unable to access witnesses to the incident due to his confinement in administrative custody. (*Id.*). As we have previously stated:

> An inmate in a prison disciplinary proceeding has no constitutional right to counsel. However, in cases in which an inmate is illiterate, where the issues in a particular case are extremely complex, or when other circumstances warrant it, due process may require that an inmate be permitted assistance of some sort to enable him to prepare his defense. One of the circumstances which warrants such assistance is where an inmate's pre-

hearing confinement interferes with his ability to prepare his defense.

*Von Kahl v. Brennan*, 855 F. Supp. 1413, 1426 (M.D. Pa. 1994) (citations omitted) (citing *Wolff*, 418 U.S. at 570, and *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993)). Accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, McDowell has alleged sufficient facts to support a plausible claim that he was denied the limited assistance of a staff representative to help him "marshal evidence and prepare a defense," which he was unable to do himself due to his confinement in administrative custody, in violation of his Fourteenth Amendment procedural due process rights. *See Silva*, 992 F.2d at 22; *Von Kahl*, 855 F. Supp. at 1426. In particular, while McDowell was not entitled to receive a copy of the inmate-witness statements himself, he was entitled to have any such investigative reports produced for his staff representative to review for potentially exculpatory material. *See Young v. Kann*, 926 F.2d 1396, 1402, 1404 n.15, 1405 (3d Cir. 1991); *Von Kahl*, 855 F. Supp. at 1423.

McDowell's claim that he was denied an impartial disciplinary hearing, however, is patently meritless. "[T]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or

otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). McDowell has alleged no such involvement by the disciplinary committee members in the events of March 30, 2014.

Accordingly, it is recommended that McDowell's Fourteenth Amendment due process claims concerning the allegedly fabricated misconduct report (against CO Stroble, Sergeant White, and Lieutenant Rogers) and the alleged denial of an impartial disciplinary hearing (against Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barnes) be dismissed for failure to state a claim. But it is further recommended that McDowell's Fourteenth Amendment due process claims concerning the denial of the assistance of a staff representative in preparing a defense to disciplinary charges, and the failure to produce investigatory reports for review by that staff representative, be permitted to proceed against Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barnes.

### 3. SMU Cell-Conditions Claims

McDowell asserts a Fourteenth Amendment substantive due process

claim based on cell-conditions during his thirty-day stay in the SMU. McDowell alleges that he was denied any opportunity for daytime recreation and that he was strip searched on a nightly basis. As previously noted, to state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Kost*, 1 F.3d at 188 (quoting *Seiter*, 501 U.S. at 298, 303–04). Under this test, only "extreme deprivations" are sufficient to make out a constitutional claim. *See Hudson*, 503 U.S. at 9.

McDowell alleges that he was denied daytime recreation during his thirty-day stay in the SMU. "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of . . . inmates." *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 1999 (9th Cir. 1979)). But "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *Fantone v. Herbik*, 528 Fed. App'x 123, 127 (3d Cir. 2013) (per curiam). The "lack of exercise can only rise to a

constitutional violation if the deprivation is such that "movement is denied [to such extent that] muscles are allowed to atrophy [and] the health of the individual is threatened." *Banks v. Niclkin*, Civil Action No. 1:06-CV-1127, at *7 (M.D. Pa. Feb. 2, 2011) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)); *see also Tapp v. Proto*, 718 F. Supp. 598, 620 (E.D. Pa. 2010) (quoting *French* in the pretrial detention context). McDowell has failed to allege any adverse medical effects suffered as a result of his thirty-day stint in the SMU. Moreover, courts of this circuit have found even longer periods of confinement with limited or no opportunity for out-of-cell recreation or exercise to be constitutional. *See Fantone*, 528 Fed. App'x at 126–27 (denial of outside exercise for forty-six days); *Carter v. Thomas*, Civil No. 3:12-CV-1955, 2014 WL 4792600, at *4 (M.D. Pa. Sept. 23, 2014) (two-month denial of recreation without evidence of resulting tangible physical harm); *Harris v. Barone*, No. 1:11-cv-256, 2014 WL 2694005, at *4–*5 (W.D. Pa. June 13, 2014) (82-day restriction on outdoor exercise permissible in the absence of adverse medical impact and in light of inmate's misconduct history); *Gregorio v. Aviles*, Civil No. 11-2771 (WJM), 2013 WL 1187096, at *6 (D.N.J. Mar. 20, 2013) (denial of outside recreation for ten months during which pretrial detainee unit was on

lockdown); *Clark v. Aviles*, Civil No. 11-2156 (SDW), 2011 WL 5080260, at

*4 (D.N.J. Oct 26, 2011) (same).

McDowell also claims that he was subjected to nightly strip searches

during his thirty-day stay in the SMU. But it is well established that a

visual strip search of a pretrial detainee, even without reasonable

suspicion that a particular inmate sought to conceal contraband, does not

violate the Fourteenth Amendment. *See Florence v. Bd. of Chosen*

*Freeholders*, 132 S. Ct. 1510, 1518–23 (2012); *Langella v. County of*

*McKean*, No. 09-cv-311E, 2010 WL 3824222, at *11–*12 (W.D. Pa. Sept.

23, 2010).[9]

Accordingly, it is recommended that McDowell's Fourteenth

---

[9] In his amended complaint, McDowell has expressly limited the scope of his claims to alleged violations of the Fourteenth Amendment. In his prayer for relief, there is a single stray reference to the Fourth Amendment. Viewing this reference in the context of the entire amended complaint, this appears to be a scrivener's error—perhaps an artifact of the original complaint mistakenly held over in the process of preparing the amended complaint. But if it was McDowell's intent to assert a violation of his Fourth Amendment rights as well, any such claim is meritless for the same reasons set forth in our prior report recommending dismissal of the original complaint (Doc. 40). *See Florence*, 132 S. Ct. at 1518–23; *Block v. Rutherford*, 468 U.S. 576, 589–91 (1984); *Bell*, 441 U.S. at 555–60; *Langella*, 2010 WL 3824222, at *11–*12; *Ostrander v. Horn*, 145 F. Supp. 2d 614, 620 (M.D. Pa. 2001); *Wilson v. Shannon*, 982 F. Supp. 337, 339–40 (M.D. Pa. 1997).

Amendment cell-conditions claims be dismissed for failure to state a claim.

### D. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, McDowell has already had an opportunity to amend his complaint to state a viable cause of action. Even after amendment, several of his claims lack merit. Dismissal of those claims *without* further leave to amend is recommended, as allowing McDowell leave to amend his pleadings for a second time would be futile.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The defendants' motions to dismiss (Doc. 51; Doc. 67) the amended complaint be **GRANTED in part and DENIED in part**;

2.    All requests for declaratory or injunctive relief be **DISMISSED** *sua sponte* as **MOOT**;

3.    All claims against Warden Deparlos, CO Stroble, CO Johnson, Sergeant White, and Lieutenant Rogers be **DISMISSED** for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

4.     The plaintiff's Fourteenth Amendment due process claims against Deputy Warden Shoemaker, Lieutenant Entz, and Counselor Barnes concerning the denial of an impartial disciplinary hearing be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

5.     The plaintiff's Fourteenth Amendment due process claims concerning SMU cell conditions be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

6.     The plaintiff's Fourteenth Amendment due process claims concerning the denial of the assistance of a staff representative in preparing a defense to disciplinary charges, and the failure to produce investigatory reports for review by that staff representative, be permitted to proceed; and

7.     This matter be remanded to the undersigned for further proceedings.


Dated: February 2, 2017                    ***s/ Joseph F. Saporito, Jr.***
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

REUBEN MCDOWELL,

        Plaintiff,

        v.

KEVIN A. DEPARLOS, Warden, et al.

        Defendants.

CIVIL ACTION NOS. 1:15-cv-00487

(CALDWELL, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated February 2, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: February 2, 2017             ***s/ Joseph F. Saporito, Jr.***
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge